LIU, J., Concurring.
As today’s opinion explains, the Court of Appeal was incorrect to conclude that earlier evidence of lack of insight had “evaporated” *222 in light of more recent psychological reports, particularly when petitioner declined to be interviewed by the psychologist appointed by California’s Department of Corrections and Rehabilitation (CDCR) and to speak to the Board of Parole Hearings (Board) about his commitment offense or his social history. “[A]n inmate who restricts the Board’s access to current information is in no position to complain about the Board’s reliance on other relevant evidence.” (Maj. opn., ante, at p. 199.)
The court’s opinion today goes beyond this holding in an effort to clarify the “some evidence” standard of review and to provide guidance regarding lack of insight as a suitability factor. The court’s commentary on both issues prompts me to offer some additional remarks.
I. Parole Decisions and the “Some Evidence” Standard
In light of the Court of Appeal’s overreaching in this case, today’s decision correctly emphasizes that judicial review of Board decisions is deferential: “While the evidence supporting a parole unsuitability finding must be probative of the inmate’s current dangerousness, it is not for the reviewing court to decide which evidence in the record is convincing.” (Maj. opn., ante, at p. 211, italics omitted, citing In re Lawrence (2008) 44 Cal.4th 1181, 1204, 1212 [82 Cal.Rptr.3d 169, 190 P.3d 535] (Lawrence).) As we observed in Lawrence, “ ‘[Resolution of any conflicts in the evidence and the weight to be given the evidence are within the authority of the Board.’ ” (Lawrence, supra, 44 Cal.4th at p. 1204, quoting In re Rosenkrantz (2002) 29 Cal.4th 616, 656 [128 Cal.Rptr.2d 104, 59 P.3d 174] (Rosenkrantz).) More broadly, we have explained that judicial review of parole decisions under the “some evidence” standard must be highly deferential so that it does not “impermissibly shift the ultimate discretionary decision of parole suitability from the executive branch to the judicial branch.” (44 Cal.4th at p. 1212.)
The emphasis on judicial deference is part of the court’s effort to summarize the principles governing judicial review of parole decisions. (Maj. opn., ante, at pp. 220-221.) Because today’s opinion focuses on the obligations of reviewing courts, I think it useful and complementary to summarize a few principles governing the Board’s obligations as well.
As we have repeatedly said, the parole statute and regulations put the onus on the Board to justify denial of parole: “ ‘[T]he governing statute provides that the Board must grant parole unless it determines that public safety requires a lengthier period of incarceration for the individual because of the gravity of the offense underlying the conviction. (Pen. Code, § 3041, subd. (b).) And as set forth in the governing regulations, the Board must set a parole date for a prisoner unless it finds, in the exercise of its judgment after *223 considering the circumstances enumerated in section 2402 of the regulations, that the prisoner is unsuitable for parole. Accordingly, parole applicants in this state have an expectation that they will be granted parole unless the Board finds, in the exercise of its discretion, that they are unsuitable for parole in light of the circumstances specified by statute and by regulation.’ (Rosenkrantz, supra, 29 Cal.4th at p. 654, italics added; see also In re Smith (2003) 114 Cal.App.4th 343, 366 [7 Cal.Rptr.3d 655] [‘parole is the rule, rather than the exception’].)” (Lawrence, supra, 44 Cal.4th at p. 1204.)
In light of this basic statutory obligation to grant parole unless public safety is at risk, we have held that the Board, as a matter of due process, has a duty to provide “a definitive written statement of its reasons for denying parole.” (In re Sturm (1974) 11 Cal.3d 258, 272 [113 Cal.Rptr. 361, 521 P.2d 97] (Sturm).) The requirement of a definitive written statement of reasons serves two functions. First, it serves to “adequately inform the inmate” of the reasons for the denial (ibid.) so that the inmate is given a fair opportunity to make the life changes necessary to be considered suitable for parole in the future. Second, the requirement fulfills the “mandate that a basis for administrative action must be set forth with sufficient clarity as to be understandable” so as “to afford an adequate basis for judicial review.” (Ibid.) Although the Board is not required to “comprehensively marshal the evidentiary support for its reasons” (maj. opn., ante, at p. 214, fn. 11), it is required to point to evidence in the record that supports its reasoning. Otherwise, the statement of reasons would be conclusory and would fail to concretely inform the prisoner and the reviewing court of the Board’s decisionmaking process.
The Board’s obligation to provide a definitive written statement of reasons for denying parole shapes the nature of judicial review. As we said in Lawrence, the task of reviewing courts is to “determine whether the facts relied upon by the Board or the Governor support the ultimate decision that the inmate remains a threat to public safety” (Lawrence, supra, 44 Cal.4th at p. 1213) and specifically to determine whether the Board’s or the Governor’s decision includes “reasoning establishing a rational nexus” between identified unsuitability factors and current dangerousness (id. at p. 1210). In other words, the focus of judicial review is on the rationality of the Board’s or the Governor’s decision—not only the ultimate conclusion of current dangerousness but also the evidence and reasoning on which the Board or Governor actually relied to reach that conclusion.
Today’s opinion says that “[t]he court reviews the entire record to determine whether a modicum of evidence supports the parole suitability decision” (maj. opn., ante, at p. 221) and that “[o]nly when the evidence reflecting the inmate’s present risk to public safety leads to but one conclusion [(i.e., nondangerousness)] may a court overturn a contrary decision by the Board or *224 the Governor” (id. at p. 211). (See also id. at p. 214 [“a court must consider the whole record in the light most favorable to the determination before it, to determine whether it discloses some evidence . . .” supporting the denial of parole].) Although these statements properly underscore the deferential nature of judicial review, I do not understand today’s opinion to contravene the principle that the reviewing court’s primary focus is on the “facts” and “reasoning” relied on by the Board (Lawrence, supra, 44 Cal.4th at pp. 1213, 1210). If that were not the case, at least three problems would arise.
First, judicial review would not serve to enforce the Board’s obligation to provide “a definitive written statement of its reasons for denying parole.” (Sturm, supra, 11 Cal.3d at p. 272.) Second, judicial review would run the risk of “impermissibly shift[ing] the ultimate discretionary decision of parole suitability from the executive branch to the judicial branch.” (Lawrence, supra, 44 Cal.4th at p. 1212.) Third, judicial review would not serve to “ensure that the Board and the Governor have complied with the statutory mandate and have acted within their constitutional authority.” (Id. at p. 1213.) For how can a court determine whether a parole “decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards . . .” (Rosenkrantz, supra, 29 Cal.4th at p. 677) unless judicial review focuses on the Board’s or the Governor’s actual decisionmaking?
Given these concerns, it is no surprise that our consistent practice has been to examine the evidence and reasoning on which the Board or the Governor actually relied. (See, e.g., Lawrence, supra, 44 Cal.4th at pp. 1221-1227; In re Shaputis (2008) 44 Cal.4th 1241, 1258-1260 [82 Cal.Rptr.3d 213, 190 P.3d 573] (Shaputis I); In re Dannenberg (2005) 34 Cal.4th 1061, 1095 [23 Cal.Rptr.3d 417, 104 P.3d 783]; Rosenkrantz, supra, 29 Cal.4th at pp. 678-683.) In undertaking that inquiry, we have been mindful of the deference owed to the Board’s and the Governor’s authorities. And, as explained in part II. below, we have considered the entire record for the purpose of determining whether the evidence on which the Board or the Governor relied rationally supports a finding of current dangerousness in the context of all other evidence that the Board or the Governor is obligated to consider. But reviewing courts have not upheld the parole authority’s decision based on evidence substantially different from that on which the authority actually relied.
While the court is correct that “some evidence” review is more deferential than the substantial evidence standard used to review criminal jury verdicts (maj. opn., ante, at p. 214), it is also a more focused form of judicial review. Unlike the Board, a jury is not required to give “a definitive written statement of its reasons” (Sturm, supra, 11 Cal.3d at p. 272) for a verdict, and the *225 reasons for protecting the sanctity and secrecy of jury deliberations (see, e.g., People v. Cleveland (2001) 25 Cal.4th 466, 475 [106 Cal.Rptr.2d 313, 21 P.3d 1225]) have no applicability to the Board. Given these differences, appellate review of jury verdicts properly examines what evidence and inferences a rational fact finder could have relied on, while judicial review of parole decisions properly examines what evidence and inferences the Board did rely on. At the same time, a jury verdict must be supported by evidence substantial enough to support a finding of guilt beyond a reasonable doubt, while a parole denial need only be supported by some evidence that is rationally indicative of current dangerousness.
Further, although appellate review of trial court decisions for sufficiency of the evidence “extends to the entire record, and is not limited to facts mentioned in [the] statement of decision” (maj. opn., ante, at p. 214, fn. 11), that is because what matters to an appellate court is the lower court’s judgment, i.e., whether its ultimate determination regarding guilt or liability was correct. Judicial review in the parole context examines the rationality of the parole authority’s decision, an inquiry that properly focuses on the authority’s reasoning, including the evidence cited by the authority in support of its reasoning.
II. Lack of Insight
As mentioned above, an important dimension of the rationality required of parole decisions is that the Board or the Governor must offer “reasoning establishing a rational nexus” between identified unsuitability factors and current dangerousness. (Lawrence, supra, 44 Cal.4th at p. 1210.) We applied that requirement in Lawrence to hold that the Governor may rely on the circumstances of the commitment offense to establish parole unsuitability “if, and only if, those circumstances are probative of the determination that a prisoner remains a danger to the public.” (Id. at p. 1212.) We explained that according talismanic significance to the circumstances of the commitment offense or any other unsuitability factor would be “inconsistent with the statutory mandate that the Board and the Governor consider all relevant statutory factors when evaluating an inmate’s suitability for parole.” (Id. at pp. 1191, 1212 [“It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public.”].) In Lawrence, we invalidated the Governor’s decision to deny parole because his reliance on the circumstances of the commitment offense to establish unsuitability lacked any “articulation of a rational nexus between those facts and current dangerousness” in light of the inmate’s rehabilitative gains. (Id. at p. 1227.)
*226 Today’s decision acknowledges that “lack of insight, like any other parole unsuitability factor, supports a denial of parole only if it is rationally indicative of the inmate’s current dangerousness.” (Maj. opn., ante, at p. 219, citing Lawrence, supra, 44 Cal.4th at p. 1210.) We do not hold today—nor did we hold in Shaputis I, where we first recognized lack of insight as an unsuitability factor (Shaputis I, supra, 44 Cal.4th at p. 1255)—that some evidence of lack of insight into past criminal behavior necessarily means there is some evidence of current dangerousness. There are good reasons to resist such a holding.
First, as the court acknowledges, older evidence of lack of insight may be eclipsed by more recent evidence: “Usually the record that develops over successive parole hearings has components of the same kind: CDCR reports, psychological evaluations, and the inmate’s statements at the hearings. In such cases, the Board or the Governor may not arbitrarily dismiss more recent evidence in favor of older records when assessing the inmate’s current dangerousness.” (Maj. opn., ante, at p. 211.) In Lawrence, for example, we rejected the Governor’s suggestion that the petitioner continued to pose a danger due to serious psychiatric problems, concluding that the Governor’s position was based on earlier, superseded psychological evaluations. (Lawrence, supra, 44 Cal.4th at pp. 1223-1224.) Courts may properly intervene when the Board or the Governor rely on outdated evidence of lack of insight in denying parole. (See In re Gomez (2010) 190 Cal.App.4th 1291, 1308-1309 [118 Cal.Rptr.3d 900]; In re Twinn (2010) 190 Cal.App.4th 447, 468-469 [118 Cal.Rptr.3d 399].)
Second, even recent evidence of lack of insight does not necessarily mean there is some evidence the inmate is currently dangerous. This is most obviously the case when an inmate, due to advanced age and infirmity, is no longer capable of being dangerous, no matter how little insight he has into previous criminal behavior. But even in cases not involving incapacity, our Courts of Appeal have recognized that lack of insight is not invariably linked to current dangerousness.
The term “lack of insight” in the parole context appears to refer broadly to inmates with one of two types of deficiencies: (1) to inmates who deny committing the crime for which they were convicted or deny the official version of the crime and (2) to inmates who admit their crime but are regarded as having an insufficient understanding of the causes of their criminal conduct.
In the first category, some courts have reversed parole denials that were based solely on the inmate’s denial of culpability for the offense. In In re Palermo (2009) 171 Cal.App.4th 1096 [90 Cal.Rptr.3d 101], for example, the *227 inmate maintained that he accidentally shot his former girlfriend, not knowing the gun was loaded, and was only guilty of manslaughter. The state argued that the killing was intentional, and he was convicted of second degree murder. The court, in reversing the Board’s denial, noted his record as a model prisoner and the fact that he was consistently remorseful for the shooting, even though he continued to maintain it was accidental. The court also observed that under Penal Code section 5011, subdivision (b), “[t]he Board is precluded from conditioning a prisoner’s parole on an admission of guilt.” (Palermo, at p. 1110.) The court reasoned that “defendant’s version of the shooting of the victim was not physically impossible and did not strain credulity such that his denial of an intentional killing was delusional, dishonest, or irrational. And, unlike . . . in . . . Shaputis [1] . . . , defendant accepted ‘full responsibility’ for his crime and expressed complete remorse .... Under these circumstances, his continuing insistence that the killing was the unintentional result of his foolish conduct (a claim which is not necessarily inconsistent with the evidence) does not support the Board’s finding that he remains a danger to public safety.” (Palermo, supra, 171 Cal.App.4th at p. 1112, italics omitted; see also In re Jackson (2011) 193 Cal.App.4th 1376, 1391 [123 Cal.Rptr.3d 486]; In re McDonald (2010) 189 Cal.App.4th 1008, 1023 [118 Cal.Rptr.3d 145].)
In other cases, courts have reversed parole denials that were based on an inmate’s insufficient understanding of the causes of his or her criminal conduct. In In re Roderick (2007) 154 Cal.App.4th 242 [65 Cal.Rptr.3d 16] (Roderick), for example, the inmate was convicted of second degree murder and had an extensive criminal history, partly related to his alcoholism. (Id. at pp. 248-251.) His record of rehabilitation was impressive, and a long string of psychological reports concluded that he posed no more danger to the public than the average person. (Id. at p. 271.) Yet the reports also found that he lacked any in-depth understanding of the causes of his criminal activity other than recognizing its connection to alcoholism and describing such activity as “stupid.” (Ibid.) While acknowledging that the inmate’s responses “were unsophisticated and lacked analytical depth,” the court posed the question whether “his inability to articulate a more insightful explanation as to why he committed multiple crimes [is] some evidence that Roderick poses a danger to public safety?” (Ibid.) The court concluded it was not: “Roderick provided a less than incisive explanation for his chronic criminality, but his responses also reflected acceptance of his alcoholism, acknowledgement of responsibility for his crimes, remorse, and shame. Ignoring the unanimous clinical evidence to the contrary presented by trained experts—since 1999 all psychological reports conclude he would pose no more danger to society than the average citizen—the Panel’s arbitrary pronouncement that Roderick’s limited insight poses an unreasonable risk to public safety cannot be considered some evidence to support a denial of parole.” (Id. at p. 272; see also In re *228 Ryner (2011) 196 Cal.App.4th 533, 548-549 [126 Cal.Rptr.3d 380] (Ryner) [no evidence of current dangerousness in model prisoner notwithstanding comment in the psychological report that his insight into his criminal behavior was “weak”].)
Of course, common sense suggests that lack of insight into past criminal behavior may be probative of current dangerousness, and the court properly rejects petitioner’s argument, ostensibly based on social science research, that no such link exists. Although the social science literature does not identify lack of insight per se as one of the predictors of criminal recidivism, the term “lack of insight” as used by the Board and the Governor may encompass a number of attitudes or behaviors associated with criminal recidivism. For example, lack of remorse or failure to accept responsibility for past criminal activity may be indicative of an antisocial, psychopathic personality that is correlated with greater recidivism. (See Andrews & Bonta, The Psychology of Criminal Conduct (2d ed. 1998) 301-306.) At the same time, however, the social science literature does not support a generalization that an inmate’s lack of insight into the causes of past criminal activity or failure to admit the official version of the commitment offense is itself a reliable predictor of future dangerousness. (See id. at pp. 211-248.) The significance of lack of insight to current dangerousness must, be assessed and articulated by the Board or the Governor case by case.
When the Board undertakes this assessment, its conclusion that a life prisoner is currently dangerous and therefore should be denied parole “must be supported by some evidence, not merely by a hunch or intuition.” (Lawrence, supra, 44 Cal.4th at p. 1213, original italics.) In cases where psychological evaluations consistently indicate that an inmate poses a low risk of danger to society, a contrary conclusion must be based on more than a hunch or mere belief that he should gain more insight into his past behavior. The Board must point to evidence from which it is reasonable to infer that the inmate’s lack of insight reveals a danger undetected or underestimated in the psychological reports. (See Roderick, supra, 154 Cal.App.4th at pp. 271-272; cf. Lawrence, supra, 44 Cal.4th at pp. 1226-1227 [invalidating parole denial because Governor failed to articulate how circumstances of the commitment offense remained probative of current dangerousness given overwhelming evidence of the inmate’s rehabilitation].)
Moreover, the Board may not deny parole simply because the prisoner refuses to admit to the official version of the commitment offense. Such an automatic denial would squarely violate Penal Code section 5011, subdivision (b). An inmate’s refusal to admit his or her crime can support parole denial “if, and only if, those circumstances are probative of the determination that a prisoner remains a danger to the public” (Lawrence, supra, 44 Cal.4th at *229 p. 1212), and it is the Board’s responsibility to provide an “articulation of a rational nexus between [the inmate’s lack of insight] and current dangerousness” taking into account all other evidence concerning parole suitability or unsuitability (id. at p. 1227).
Both this case and Shaputis I demonstrate how the Board may satisfy the “rational nexus” requirement. In Shaputis I, the most current psychological report prepared in 2005 concluded that petitioner posed a low risk of future violent behavior if he maintained sobriety. (Shaputis I, supra, 44 Cal.4th at p. 1251.) But other parts of the report called that conclusion into question: “Dr. Silverstein was concerned that petitioner planned to reside with his new wife (with whom he had not previously resided) and observed that his violence tended to be ‘confined to his family systems and [it is] difficult to assess how well extinguished his pattern of domestic violence is[,] given that he has been confined for more than 18 years.” (Id. at p. 1252.) As we further observed: “During the proceedings, the Board referred to Dr. Silverstein’s report, noting the report’s observation that petitioner found ‘inexplicable’ his daughters’ prior allegations of molestation and domestic violence, that he had a flat affect when discussing these allegations, and that this circumstance could be a sign of the schizoid tendencies noted in some previous evaluations. The Board expressed concerns regarding petitioner’s lack of insight into his history of domestic violence and his alcoholism, and voiced the attendant concern that he would present an unreasonable risk of danger to the public and to his new wife.” (Ibid.) In other words, the Board and subsequently the Governor went behind the report’s conclusion that petitioner presented a low risk of violence and found in the body of the report indications that this conclusion understated the risk of violence he posed if released. We held this conclusion reasonable in light of petitioner’s historic pattern of domestic violence that had culminated in his wife’s murder. (Id. at p. 1260.) This holding came nowhere close to generalizing that some evidence of lack of insight is necessarily some evidence of current dangerousness, and our limited holding in the present case likewise offers no support for such a sweeping conclusion.
Ultimately, lack of insight may be indicative of current dangerousness in many cases, and today’s decision may be correct that “insight bears more immediately on the ultimate question of the present risk to public safety posed by the inmate’s release” than the circumstances of the commitment offense. (Maj. opn., ante, at p. 219.) But there is good reason to require the Board to articulate a rational nexus between insight and dangerousness in each case, taking into account all other evidence of suitability or unsuitability. As one Court of Appeal put it, “one always remains vulnerable to a charge that he or she lacks sufficient insight into some aspect of past misconduct even after meaningful self-reflection and expressions of remorse.” (Ryner, supra, 196 Cal.App.4th at p. 548.) It is difficult enough for ordinary *230 law-abiding individuals to fully understand and explain all of one’s behaviors and motivations. One can only surmise that achieving such self-understanding is at least as difficult for individuals who have committed violent crimes. Precisely because lack of insight is such a readily available diagnosis, its significance as an indicator of current dangerousness must be rationally articulated under the individual circumstances of each case—lest “lack of insight” become, impermissibly, a new talisman with the potential to render almost all life inmates unsuitable for parole. (See Lawrence, supra, 44 Cal.4th at p. 1212 [emphasizing “the statute’s directive that the Board shall normally set a parole release date ([Pen. Code,] § 3041, subd. (a))”].)
Petitioner’s petition for a rehearing was denied March 19, 2012.